Filed
File Date: 4/11/2023 9:48 PM
Coos Superior Court
E-Filed Document

## STATE OF NEW HAMPSHIRE

COOS COUNTY, SS.

SUPERIOR COURT
Docket No:      214-2023-CV-00048

April Lamontagne and Roland Lamontagne, Jr., As Co-Guardians of Kassie-Marie Lamontagne,

Plaintiffs,

V.

Rashmi Hande, M.D., Akshat Paliwal, M.D., Arthur Ruediger, D.O., Basem Elbrolosy, M.D., Virtual Radiologic Professionals, L.L.C., Coos North Country Radiology, P.L.L.C. d/b/a North Country Radiology, and Androscoggin Valley Hospital,
Defendants

### *COMPLAINT*

### PARTIES

1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, are residents of 380 Forbush Avenue, Berlin, Coos County, New Hampshire.

2. The defendant, Rashmi Hande, M.D., 1510 Heather Field Lane, Earlysville, Ablemarle County, VA, formerly of Virtual Radiologic Professionals, L.L.C., 11995 Singletree Lane, Suite 500, Eden Prairie, Hennepin County, MN, was at all times relevant to this Complaint a physician licensed to practice her profession in the State of New Hampshire.

3. The defendant, Akshat Paliwal, M.D., Coos North Country Radiology, P.L.L.C. d/b/a North Country Radiology, 59 Page Hill Road, Berlin, Coos County, New Hampshire, was at all times relevant to this Complaint a physician licensed to practice his profession in the State of New Hampshire.

4. The defendant, Arthur Ruediger, D.O., Androscoggin Valley Hospital, 59 Page Hill Road, Berlin, Coos County, New Hampshire, was at all times relevant to this Complaint a physician licensed to practice his profession in the State of New Hampshire.

5. The defendant, Basem Elbrolosy, M.D., St. Mary's Health System, Poland Family Practice, 1230 Main Street, Portland, Cumberland County, Maine, formerly of 133 Pleasant Street, Berlin, Coos County, New Hampshire, was at all times relevant to this Complaint, a physician licensed to practice his profession in the State of New Hampshire.

6. The defendant, Virtual Radiologic Professionals, L.L.C., 11995 Singletree Lane, Suite 500, Eden Prairie, Hennepin County, MN was at all times relevant to this Complaint, a corporation organized and existing under the laws of the State of Minnesota and doing business in New

1

Hampshire, with a Registered Agent listed as Corporation Service Company, 10 Ferry Street Suite 313, Concord, NH, 03301.

7. The defendant, Coos North Country Radiology, P.L.L.C. d/b/a North Country Radiology, 59 Page Hill Road, Berlin, Coos County, New Hampshire, was at all times relevant to this Complaint a corporation organized and existing under the laws of the State of New Hampshire.

8. The defendant, Androscoggin Valley Hospital, 59 Page Hill Road, Berlin, Coos County, New Hampshire, was at all times relevant to this Complaint a corporation organized and existing under the laws of the State of New Hampshire.

## UNDERLYING FACTUAL ALLEGATIONS

1. Kassie-Marie Lamontagne was 28 years old when she suffered a ruptured left MCA aneurysm that caused a subarachnoid hemorrhage and resulted in acute respiratory failure, hypoxia and permanent neurological injuries.

2. Kassie-Marie Lamontagne received her primary medical care and treatment at Coos County Family Health Services (CCFHS). She was seen annually for physical examinations and as necessary for sick visits.

3. As of April 2020, Ms. Lamontagne's family medical history included a mother and maternal grandmother with a history of brain aneurysms.

4. As of April 2020, Ms. Lamontagne was 28 years old, and worked as a pharmacy technician.

5. On 4/30/20, Ms. Lamontagne had a phone visit with Dr. Basem Elbrolosy at Coos County Family Health Services because of a complaint of a headache. Ms. Lamontagne reported that her headache began that morning and was associated with shortness of breath and palpitations. She took a sumatriptan tablet that was not effective, and took another tablet 2 hours later that relieved the headache but she still had of shortness of breath and palpitations. Ms. Lamontagne described having a similar attack approximately six years prior, and a CT scan of her brain was performed and was read as negative. Ms. Lamontagne denied vomiting, weakness, paresthesia, syncope or sensory loss. On review of systems, Ms. Lamontagne denied blurred vision or vision loss. She complained of palpations, dyspnea, headache and anxiety.

6. Dr. Elbrolosy noted that the phone visit lasted approximately 5 minutes and that Ms. Lamontagne's headache complaint was totally relieved. Dr. Elbrolosy instructed Ms. Lamontagne that if her headache recurred, and was associated with vomiting, visual changes, or weakness and numbness, then to contact 911 or report directly to the Emergency Department. Dr. Elbrolosy's assessment was a panic attack, and she recommended Ms. Lamontagne to relax in a dark quiet room, to avoid using extra sumatriptan, and to call back with any concerns.

7. On Saturday, 5/2/20, Ms. Lamontagne called Coos County Family Health Service with an elevated BP of 140/90 and headache and was referred to the ED for evaluation.

8. At approximately 1:42 p.m. on 5/2/20, Ms. Lamontagne presented to the Emergency Department at Androscoggin Valley Hospital for evaluation of headache and abnormal blood pressure. At the time of this visit, Ms. Lamontagne was 28 years old.

9. Ms. Lamontagne reported that she had an intermittent headaches for the last month, however, she had increased discomfort that began three days prior to this ED visit. She described the discomfort as throbbing and involved her entire head, with blurring of her right eye vision, and nausea, but no vomiting. Also, she had throbbing of her head that worsened with exertion. She also reported an episode of tingling of the right hand, below the right eye, and tip of tongue two days prior that was transient. She tried Imitrex, Excedrin and ibuprofen with some improvement in discomfort. She denied any recent trauma, weakness, tinnitus, photosensitivity, or phono sensitivity. Her family medical history included a father who had hypertension, and mother and sister who have migraines. Her vital signs included BP 125/95, pulse 88, respirations 15-16, pulse oximetry 100%, and temperature 99.9 F. An EKG found a normal sinus rhythm. Ms. Lamontagne's home medications included levonorgestrel-ethinyl estradiol (1 tablet, daily), and sumatriptan succinate (25 mg, PRN).

10. Ms. Lamontagne was seen and evaluated by Arthur Ruediger, D.O., who noted that the physical examination was generally within normal limits. Dr. Ruediger's neurological exam found Ms. Lamontagne alert and oriented x 3 with cranial nerves intact bilaterally, with normal cognition and speech, with normal strength throughout (5/5), with no sensory deficits.

11. Dr. Ruediger ordered a head CT scan without contrast; however, Dr. Ruediger did not elicit a thorough family history and did not inquire about Ms. Lamontagne's family history of brain aneurysms. Ms. Lamontagne's mother and maternal grandmother both have a medical history of brain aneurysm.

12. At approximately 2:41 p.m., Ms. Lamontagne underwent a head CT scan for evaluation of headache. A preliminary read and interpretation of the CT scan was performed by radiologist, Rashmi Hande, M.D. Dr. Hande noted in her findings that the brain appeared normal, with no hemorrhage, and unremarkable white matter with no mass effect. Dr. Hande further noted that the ventricles appeared normal with no ventriculomegaly, and the bones and joints were unremarkable with no acute fracture. Dr. Hande noted that the sinuses were unremarkable, the mastoid air cells were well-aerated, and the soft tissues were unremarkable. Dr. Hande's clinical impression was that there was no acute intracranial abnormality.

13. Dr. Hande did not report the presence of an abnormal hyperdense finding in the brain and did not recommend further imaging of the brain.

14. While in the ED, Dr. Ruediger received the CT scan results interpreted by Dr. Hande that reported no acute intracranial abnormality. Dr. Ruediger also noted that an IV was established and Ms. Lamontagne was provided with Toradol (30 mg), Reglan (10 mg), and diphenhydramine (50 mg), and had improvement in her symptoms.

15. At approximately 3:26 p.m., Ms. Lamontagne's blood pressure was taken and read 127/66.

3

16. Dr. Ruediger discharged Ms. Lamontagne home at 4:23 p.m.

17. On 5/3/2020, radiologist, Akshat Paliwal, M.D., performed a final review and report of the 5/2/20 CT scan of the brain. In his report, Dr. Paliwal acknowledged that the VCR preliminary interpretation was reviewed prior to the dictation, and Dr. Paliwal documented that no significant discrepancies were noted. In his report, Dr. Paliwal identified that the indication for the CT scan was for headache. Dr. Paliwal noted in his findings that the cerebral and cerebellar parenchyma were within normal limits for her age (of 28 years), with no evidence for an acute territorial infarction, focal mass lesion, or shift of the midline structures. Dr. Paliwal further noted that the ventricles and extra-axial CSF spaces were within normal limits for her age, and without hydrocephalus. Dr. Paliwal also noted that the midline structures, and paranasal sinuses and mastoid air cells were within normal limits, the visual orbits and soft tissues were normal, and osseous structures were intact. Dr. Paliwal's clinical impression was that there was no acute intracranial abnormality.

18. Dr. Paliwal did not report the presence of an abnormal hyperdense finding in the brain and did not recommend further imaging of the brain.

19. On 5/18/20, Ms. Lamontagne called CCFHS to complain of high blood pressure. Ms. Lamontagne had a telehealth (phone) visit with Basem Elbrolosy, M.D. Ms. Lamontagne reported that she checked her blood pressure at home twice daily with an average systolic read of 140-144 and diastolic read below 80. Further, she denied lightheadedness or vision changes, and had no lower extremity swelling. She reported that she did not have a headache at that time; however, during the past 3 weeks she had had an intermittent headache associated with palpitations and insomnia.

20. On review of systems, she complained of anxiety and insomnia, and on and off "attack of headache associated with palpitation." There was no physical examination because the visit was by telehealth for approximately 7 minutes.

21. Dr. Elbrolosy's assessment was a new problem of borderline high blood pressure; recommended a basic metabolic panel (BMP) and urinalysis, and to follow up with her primary care physician. Dr. Elbrolosy instructed Ms. Lamontagne to await her lab results, and exercise for 30 minutes per day (5 days per week), use "DASH" diet, and follow up with her PCP after 3 months, or sooner if needed.

22. On 5/19/20, Ms. Lamontagne's lab results revealed a BMP and urinalysis within normal limits.

23. On 5/20/20, at approximately 9:07 a.m., Ms. Lamontagne was taken by ambulance to the Emergency Department at Androscoggin Valley Hospital after she collapsed while exercising. A bystander performed CPR when she was found not breathing, and without a heart rate before EMS arrived. EMS got an initial irregular rhythm with PVCs and ST segment depression; however, she was hypoxic, and oxygen was placed. An IV line was started in the field. Her BP was low initially on scene and then systolic in the 150's by the time she arrived to the ED.

4

24. Upon arrival to the emergency department, Ms. Lamontagne was obtunded, and appeared to be clamped down with decorticate posturing and possible seizure activity.

25. She was noted to have had a recent history of migraine and head CT scan. She had no other significant health problems.

26. On examination, her pupils were fixed and non-reactive. She was obtunded and in respiratory distress. Her vital signs included temperature 97.8 F, pulse 64, respirations 16, and pulse oxygen 98%.

27. At approximately 12:15 p.m., a CT Angiogram was performed, which showed an 8 x 3 mm aneurysm at the M1 branch of the left MCA. The recommendation was to obtain a non-contrast head CT scan to assess for a subarachnoid hemorrhage.

28. While in the ED, Ms. Lamontagne remained in critical condition. The decision was made to transfer Ms. Lamontagne to Dartmouth Hitchcock Medical Center for further evaluation and treatment.

29. At approximately 3:59 p.m., Ms. Lamontagne was admitted to Dartmouth Hitchcock Medical Center, intubated with extensor posturing on the right with equal, sluggishly reactive pupils.

30. A head CT without contrast found an extensive subarachnoid hemorrhage secondary to a ruptured left MCA aneurysm with intraventricular hemorrhage (IVH), and acute hydrocephalus. The findings of acute diffuse subarachnoid hemorrhage had the greatest amount centered on the known left MCA aneurysm. Neurosurgery and Neuro-Interventional Radiology were consulted in the ED, and a right frontal external ventricular drain (EVD) was placed in the ED.

31. Ms. Lamontagne was taken to Neuro-Interventional Radiology urgently where she underwent a successful coil embolization of the left M1 aneurysm. She was also found to have a right posterior communicating artery aneurysm which was not secured, and a left ICA narrowing likely due to vasospasm from the catheter and she received nitroglycerin with improvement.

32. After the coiling, Ms. Lamontagne was found to have poor filling of the ACA branches and concern for additional filling deficits within the pericallosal artery, which was resolved with wire-assisted thrombectomy.

33. Ms. Lamontagne was transferred to the Neurocritical Care Unit where she remained unresponsive, intubated and on neosynephrine, propofol, and fentanyl drips.

34. On 5/30/20, a non-contrast head CT scan found multiple infarcts involving the frontal lobes, right temporal lobe, and left occipital lobe, and pentobarbital infusion was initiated.

35. Ms. Lamontagne continued to be treated by interventional radiology for cerebral vasospasm. CTA found persistent vasospasms, and in an attempt to wean the Nimbex, she was started on Precedex and Demerol for shivering. She also continued to have hemodynamic instability, an

episode of hypoxia (unprovoked), tachycardia, and worsening thrombocytosis, and fevers. She was slowly weaned off Versed, Dilaudid, Precedex, Klonopin and Levophed. She had concern for interval hydrocephalus once the EVD was removed. She required a tracheostomy due to persistent and prolonged mechanical ventilator support, as a result of acute respiratory failure secondary to ruptured cerebral aneurysm. She also required a percutaneous endoscopic gastrostomy (PEG) tube placement to receive enteral nutrition support.

36. On 7/10/20, after forty-six (46) days hospitalized, Ms. Lamontagne was discharged to Gaylord Hospital, a long-term acute care rehabilitation for brain injury rehabilitation.

37. Ms. Lamontagne's admitting diagnosis included cardiac arrest, subacute infarctions in the left MCA distribution and caudate and left putamen, and subarachnoid hemorrhage (status post coil embolization of left M1 aneurysm). On admission, Ms. Lamontagne was awake, alert, attentive, and non-verbal with a trach in place, unable to follow commands appropriately with upgoing plantar sign (right lower leg), no Hoffman sign, no spasticity or increased tone of extremities, PEG tube in place, with sustained ankle clonus (right).

38. During her admission, she required ongoing management of late effects of cerebral hemorrhage.

39. While at Gaylord Hospital, Ms. Lamontagne's ongoing challenges included decreased initiation, apraxia, episodic glued foot syndrome, and persistent incontinence. She had been followed by Neurology, CT imaging noted moderate ventriculomegaly, and the decision was made to transfer her care to Yale New Haven Hospital for ventriculoperitoneal (VP) shunt placement.

40. On 9/11/20, Ms. Lamontagne was transferred to Yale New Haven Hospital.

41. On 9/15/20, Ms. Lamontagne was re-admitted to Gaylord Hospital following successful placement of a VP shunt at Yale New Haven Hospital.

42. Upon re-admission, Ms. Lamontagne's deficits included neurocognitive disorder, quadriparesis (right greater than left), dysphasia, dysphagia, decreased endurance, decreased functional status, and gait disturbance.

43. During this admission, Ms. Lamontagne continued to lack initiation as to participation with functional activities, toileting, or meal intake. Her performance remained variable due to cognitive and/or behavioral barriers.

44. On 11/8/20, Ms. Lamontagne was discharged home. At discharge, she demonstrated mild-to-moderate communication deficits with auditory comprehension, verbal expression, and reading comprehension, and moderate deficits with written expression. She had deficits with oral motor function, she required assistance for bed mobility, and assistance for sit-to-stand with rolling walker or cane.

6

45. The discharge recommendations included individual physical, occupational and speech therapy services to be provided in the home, along with visiting nurse and home health aide services. She required continued G-tube feeds, and a toileting program to promote and maintain continence.

## COUNTS

**Count I.**

1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver all the allegations in the Paragraphs above under the headings of the Parties and Underlying Factual Allegations, as if expressly rewritten and set forth herein. This action is brought to recover for the conscious pain and suffering and personal injuries of Kassie-Marie Lamontagne.

2. At all times relevant to this complaint, the defendant, Rashmi Hande, M.D., was a physician licensed to practice her profession in the State of New Hampshire.

3. On or about May 2, 2020, the defendant, Rashmi Hande, M.D., represented and held herself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to Kassie-Marie Lamontagne that she was knowledgeable, competent, and qualified to diagnose and treat her condition on or about May 2, 2020.

4. On or about May 2, 2020, the defendant, Rashmi Hande, M.D., rendered medical care and treatment to Kassie-Marie Lamontagne.

5. On or about May 2, 2020, the defendant, Rashmi Hande, M.D., owed a duty to Kassie-Marie Lamontagne, to render medical care and treatment in accordance with the applicable standards of care.

6. On or about May 2, 2020, the defendant, Rashmi Hande, M.D., breached her duty to Kassie-Marie Lamontagne, including but not limited to when reviewing and interpreting a head CT scan, Dr. Hande negligently, carelessly, and without regard for Ms. Lamontagne's health and well-being, failed to recognize, identify, and report a hyperdense area located proximal to the M1 segment; when Dr. Hande failed to recognize, identify, and report a finding that was worrisome and concerning for an aneurysm; when Dr. Hande failed to provide a differential diagnosis to include an aneurysm; when Dr. Hande failed to recommend further brain imaging, including but not necessarily limited to MRI of the brain, for further evaluation, diagnosis, and/or treatment; and when Dr. Hande misdiagnosed the plaintiff.

7. On or about May 2, 2020 through the present, average qualified members of the medical profession practicing the defendant's specialty knew or should have known the risks, potential consequences and alternatives to the defendant's choice of treatment of Kassie-Marie Lamontagne. On or about May 2, 2020, the defendant, Rashmi Hande, M.D., did not inform Kassie-Marie Lamontagne, of the alternatives to and risks and potential consequences of the defendant's choice of treatment of Ms. Lamontagne. If the defendant, Rashmi Hande, M.D., had informed Kassie-Marie Lamontagne of the alternatives to and risks and potential

7

consequences of the defendant's choice of treatment of Ms. Lamontagne, neither Ms. Lamontagne, nor a reasonable person in her position would have elected the defendant's choice of treatment. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by Ms. Lamontagne and a reasonable person in her position as to whether to undergo or forego the defendant's choice of treatment.

8. The injuries suffered by Kassie-Marie Lamontagne were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment rendered by the defendant, Rashmi Hande, M.D., including but not limited to the following:

a. Defendant's misrepresentations to Kassie-Marie Lamontagne that she was knowledgeable, skillful, and competent to diagnose and treat her medical condition on or about May 2, 2020;

b. Defendant's misrepresentations to Kassie-Marie Lamontagne that she did not have an acute or life-threatening medical issue requiring urgent medical attention on or about May 2, 2020;

c. Defendant's failure to render medical care and treatment to Kassie-Marie Lamontagne on or about May 2, 2020, in a knowledgeable, skillful, reasonable, safe and competent manner;

d. Defendant's failure to adequately and properly diagnose and treat Kassie-Marie Lamontagne's medical condition on or about March 2, 2020, and her failure to prescribe proper and timely treatment for said condition;

e. Defendant's failure to recognize, or have the knowledge to recognize her inability and lack of skill to diagnose and treat Kassie-Marie Lamontagne, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of her inability and failure to properly and skillfully provide Ms. Lamontagne with acceptable medical and diagnostic services;

f. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by the average qualified physician practicing her specialty when reviewing and interpreting a head CT scan;

g. Defendant's failure to recognize, identify, and report a hyperdense area located proximal to the M1 segment;

h. Defendant's failure to recognize, identify, and report a finding that was worrisome and concerning for an aneurysm;

i. Defendant's failure to provide a differential diagnosis to include an aneurysm;

j. Defendant's failure to recommend further brain imaging, including but not necessarily limited to MRI of the brain, for further evaluation, diagnosis, and/or treatment;

8

k. Defendant's failure to properly diagnose the plaintiff; and

l. Defendant's failure to inform and failure to warn of the risks involved in or associated with Kassie-Marie Lamontagne's condition, failure to inform and warn about the treatment of said conditions, and failure to inform and disclose to Ms. Lamontagne the available alternatives to her proposed course of treatment.

9. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Rashmi Hande, M.D., Kassie-Marie Lamontagne was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense of her medical, surgical, hospital care and treatment, rehabilitation and therapies; has suffered and will continue to suffer great pain of body and anguish of mind; lost earning capacity; loss of enjoyment of life; hedonic damages; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Rashmi Hande, M.D., in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count II.**
1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver all the allegations in the Paragraphs above under the headings of the Parties and Underlying Factual Allegations and Count I, as if expressly rewritten and set forth herein.

2. As a direct and proximate result of the defendant, Rashmi Hande, M.D.'s, negligence and failure to obtain informed consent, Kassie-Marie Lamontagne has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Rashmi Hande, M.D., in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count III.**
1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, reside at 380 Forbush Avenue, Berlin, Coos County, New Hampshire.

2. The defendant, Rashmi Hande, M.D., was at all times relevant to this Complaint, a physician licensed to practice her profession in the State of New Hampshire.

3. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver fully herein the facts and allegations contained in the aforementioned Counts pleaded by April Lamontagne and Roland Lamontagne, Jr., as Co-

9

Guardians of Kassie-Marie Lamontagne, against the defendant, Rashmi Hande, M.D., in this Complaint as if each were set forth here in its entirety.

4. As a direct and proximate result of the defendant, Rashmi Hande, M.D.'s negligence and failure to obtain informed consent, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, have incurred and will continue to incur great expense for the medical, surgical, hospital care and treatment, rehabilitation and therapies, of Kassie-Marie Lamontagne throughout the remainder of her life.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Rashmi Hande, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

**Count IV.**
1. The plaintiffs, April Lamontagne and Roland, Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver all the factual allegations in the Paragraphs above under the headings of Parties and Underlying Factual Allegations, as well as Counts I through III, as if expressly written and set forth herein.  This action is to recover the conscious pain and suffering and personal injuries of Kassie-Marie Lamontagne.

2. At all times relevant to this complaint, the defendant, Akshat Paliwal, M.D., was a physician licensed to practice his profession in the State of New Hampshire.

3. On or about May 3, 2020, the defendant, Akshat Paliwal, M.D., represented and held himself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to Kassie-Marie Lamontagne that he was knowledgeable, competent, and qualified to diagnose and treat her condition on or about May 3, 2020.

4. On or about May 3, 2020, the defendant, Akshat Paliwal, M.D., rendered medical care and treatment to Kassie-Marie Lamontagne.

5. On or about May 3, 2020, the defendant, Akshat Paliwal, M.D., owed a duty to Kassie-Marie Lamontagne, to render medical care and treatment in accordance with the applicable standards of care.

6. On or about May 3, 2020, the defendant, Akshat Paliwal, M.D., breached his duty to Kassie-Marie Lamontagne, including but not limited to when reviewing and interpreting a head CT scan, Dr. Paliwal negligently, carelessly, and without regard for Ms. Lamontagne's health and well-being, failed to recognize, identify, and report a hyperdense area located proximal to the M1 segment; when Dr. Paliwal failed to recognize, identify, and report a finding that was worrisome and concerning for an aneurysm; when Dr. Paliwal failed to provide a differential diagnosis to include an aneurysm; when Dr. Paliwal failed to recommend further brain imaging, including but not necessarily limited to MRI of the brain, for further evaluation, diagnosis, and/or treatment; and when Dr. Paliwal misdiagnosed the plaintiff.

7. On or about May 3, 2020 through the present, average qualified members of the medical profession practicing the defendant's specialty knew or should have known the risks, potential consequences and alternatives to the defendant's choice of treatment of Kassie-Marie Lamontagne. On or about May 3, 2020, the defendant, Akshat Paliwal, M.D., did not inform Kassie-Marie Lamontagne, of the alternatives to and risks and potential consequences of the defendant's choice of treatment of Ms. Lamontagne. If the defendant, Akshat Paliwal, M.D., had informed Kassie-Marie Lamontagne of the alternatives to and risks and potential consequences of the defendant's choice of treatment of Ms. Lamontagne, neither Ms. Lamontagne, nor a reasonable person in her position would have elected the defendant's choice of treatment. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by Ms. Lamontagne and a reasonable person in her position as to whether to undergo or forego the defendant's choice of treatment.

8. The injuries suffered by Kassie-Marie Lamontagne were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment rendered by the defendant, Akshat Paliwal, M.D., M.D., including but not limited to the following:

   a. Defendant's misrepresentations to Kassie-Marie Lamontagne that he was knowledgeable, skillful, and competent to diagnose and treat her medical condition on or about May 3, 2020;

   b. Defendant's misrepresentations to Kassie-Marie Lamontagne that she did not have an acute or life-threatening medical issue requiring urgent medical attention on or about May 3, 2020;

   c. Defendant's failure to render medical care and treatment to Kassie-Marie Lamontagne on or about May 3, 2020, in a knowledgeable, skillful, reasonable, safe and competent manner;

   d. Defendant's failure to adequately and properly diagnose and treat Kassie-Marie Lamontagne's medical condition on or about May 3, 2020, and his failure to prescribe proper and timely treatment for said condition;

   e. Defendant's failure to recognize, or have the knowledge to recognize his inability and lack of skill to diagnose and treat Kassie-Marie Lamontagne, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of his inability and failure to properly and skillfully provide Ms. Lamontagne with acceptable medical and diagnostic services;

   f. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by the average qualified physician practicing his specialty reviewing and interpreting a head CT scan;

   g. Defendant's failure to recognize, identify, and report a hyperdense area located proximal to the M1 segment;

11

   h. Defendant's failure to recognize, identify, and report a finding that was worrisome and concerning for an aneurysm;

   i. Defendant's failure to provide a differential diagnosis to include an aneurysm;

   j. Defendant's failure to recommend further brain imaging, including but not necessarily limited to MRI of the brain, for further evaluation, diagnosis, and/or treatment;

   k. Defendant's failure to properly diagnose the plaintiff; and

   l. Defendant's failure to inform and failure to warn of the risks involved in or associated with Kassie-Marie Lamontagne's condition, failure to inform and warn about the treatment of said conditions, and failure to inform and disclose to Ms. Lamontagne the available alternatives to her proposed course of treatment.

9. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Akshat Paliwal, M.D., Kassie-Marie Lamontagne was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense of her medical, surgical, hospital care and treatment, rehabilitation and therapies; has suffered and will continue to suffer great pain of body and anguish of mind; lost earning capacity; loss of enjoyment of life; hedonic damages; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

   WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Akshat Paliwal, M.D., in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count V.**
1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver all the allegations in the Paragraphs above under the headings of the Parties and Underlying Factual Allegations and Counts I through IV, as if expressly rewritten and set forth herein.

2. As a direct and proximate result of the defendant, Akshat Paliwal, M.D.'s, negligence and failure to obtain informed consent, Kassie-Marie Lamontagne has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

   WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Akshat Paliwal, M.D., in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count VI.**
1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, reside at 380 Forbush Avenue, Berlin, Coos County, New Hampshire.

2. The defendant, Akshat Paliwal, M.D., was at all times relevant to this Complaint, a physician licensed to practice his profession in the State of New Hampshire.

3. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver fully herein the facts and allegations contained in the aforementioned Counts pleaded by April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, against the defendant, Akshat Paliwal, M.D., in this Complaint as if each were set forth here in its entirety.

4. As a direct and proximate result of the defendant, Akshat Paliwal, M.D.'s negligence and failure to obtain informed consent, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, have incurred and will continue to incur great expense for the medical, surgical, hospital care and treatment, rehabilitation and therapies, of Kassie-Marie Lamontagne throughout the remainder of her life.

   WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Akshat Paliwal, M.D., in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count VII.**
1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie Lamontagne, repeat and reaver all the factual allegations in the Paragraphs above under the headings of Parties and Underlying Factual Allegations, as well as Counts I through VI, as if expressly written and set forth herein. This action is to recover the conscious pain and suffering and personal injuries of Kassie-Marie Lamontagne.

2. At all times relevant to this complaint, the defendant, Arthur Ruediger, D.O., was a physician licensed to practice his profession in the State of New Hampshire.

3. On or about May 2, 2020, the defendant, Arthur Ruediger, D.O., represented and held himself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to Kassie-Marie Lamontagne that he was knowledgeable, competent, and qualified to diagnose and treat her condition on or about May 2, 2020.

4. On or about May 2, 2020, the defendant, Arthur Ruediger, D.O., rendered medical care and treatment to Kassie-Marie Lamontagne.

5. On or about May 2, 2020, the defendant, Arthur Ruediger, D.O., owed a duty to Kassie-Marie Lamontagne, to render medical care and treatment in accordance with the applicable standards of care.

6. On or about May 2, 2020, the defendant, Arthur Ruediger, D.O., breached his duty to Kassie-Marie Lamontagne, including but not limited to when Dr. Ruediger negligently, carelessly, and without regard for Ms. Lamontagne's health and well-being failed to recognize and appreciate signs and symptoms of a brain abnormality, such as an aneurysm; when Dr.

13

Ruediger failed to elicit a complete and accurate medical/social history of Ms. Lamontagne; when Dr. Ruediger failed to elicit a complete and accurate family medical history of Ms. Lamontagne; when Dr. Ruediger failed to elicit a full understanding of the description of the headache history from Ms. Lamontagne; when Dr. Ruediger failed to order a head CT scan with contrast, and/or MRI (with or without contrast), and/or CTA for further evaluation; when Dr. Ruediger failed to obtain an urgent neurology consultation for further evaluation and treatment; when Dr. Ruediger misdiagnosed Ms. Lamontagne; and when Dr. Ruediger discharged Ms. Lamontagne to home rather than obtain the necessary and appropriate diagnostic testing and treating that she required.

7.  On or about May 2, 2020 through the present, average qualified members of the medical profession practicing the defendant's specialty knew or should have known the risks, potential consequences and alternatives to the defendant's choice of treatment of Kassie-Marie Lamontagne.

8.  On or about May 2, 2020, the defendant, Arthur Ruediger, D.O., did not inform Kassie-Marie Lamontagne, of the alternatives to and risks and potential consequences of the defendant's choice of treatment of Ms. Lamontagne. If the defendant, Arthur Ruediger, D.O., had informed Kassie-Marie Lamontagne of the alternatives to and risks and potential consequences of the defendant's choice of treatment of Ms. Lamontagne, neither Ms. Lamontagne, nor a reasonable person in her position would have elected the defendant's choice of treatment. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by Ms. Lamontagne and a reasonable person in her position as to whether to undergo or forego the defendant's choice of treatment.

9.  The injuries suffered by Kassie-Marie Lamontagne were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment rendered by the defendant, Arthur Ruediger, D.O., including but not limited to the following:

    a.  Defendant's misrepresentations to Kassie-Marie Lamontagne that he was knowledgeable, skillful, and competent to diagnose and treat her medical condition on or about May 2, 2020;

    b.  Defendant's misrepresentations to Kassie-Marie Lamontagne that she did not have an acute or life-threatening medical issue requiring urgent medical attention on or about May 2, 2020;

    c.  Defendant's failure to render medical care and treatment to Kassie-Marie Lamontagne on or about May 2, 2020, in a knowledgeable, skillful, reasonable, safe and competent manner;

    d.  Defendant's failure to adequately and properly diagnose and treat Kassie-Marie Lamontagne's medical condition on or about May 2, 2020, and his failure to prescribe proper and timely treatment for said condition;

    e.  Defendant's failure to recognize, or have the knowledge to recognize his inability and lack of skill to diagnose and treat Kassie-Marie Lamontagne, when the defendant knew or

14

should have known in the exercise of due care, the foreseeable consequences of his inability and failure to properly and skillfully provide Ms. Lamontagne with acceptable medical and diagnostic services;

f. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by the average qualified physician practicing his specialty;

g. Defendant's failure to recognize and appreciate signs and symptoms of a brain abnormality, such as an aneurysm;

h. Defendant's failure to elicit a complete and accurate medical/social history of Ms. Lamontagne;

i. Defendant's failure to elicit a complete and accurate family medical history of Ms. Lamontagne;

j. Defendant's failure to elicit a full understanding of the description of the headache history from Ms. Lamontagne;

k. Defendant's failure to order additional head imaging for further evaluation;

l. Defendant's failure to obtain an urgent neurology consultation for further evaluation and treatment;

m. Defendant's failure to properly diagnose the plaintiff;

n. Defendant's failure to admit Ms. Lamontagne in order to obtain the necessary and appropriate diagnostic testing and treating that she required; and

o. Defendant's failure to inform and failure to warn of the risks involved in or associated with Kassie-Marie Lamontagne's condition, failure to inform and warn about the treatment of said conditions, and failure to inform and disclose to Ms. Lamontagne the available alternatives to his proposed course of treatment.

10. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Arthur Ruediger, D.O., Kassie-Marie Lamontagne was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense of her medical, surgical, hospital care and treatment, rehabilitation and therapies; has suffered and will continue to suffer great pain of body and anguish of mind; lost earning capacity; loss of enjoyment of life; hedonic damages; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Arthur Ruediger,

D.O., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

**Count VIII.**

1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver all the allegations in the Paragraphs above under the headings of the Parties and Underlying Factual Allegations and Counts I through VII, as if expressly rewritten and set forth herein.

2. As a direct and proximate result of the defendant, Arthur Ruediger, D.O.'s, negligence and failure to obtain informed consent, Kassie-Marie Lamontagne has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Arthur Ruediger, D.O., in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count IX.**

1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, reside at 380 Forbush Avenue, Berlin, Coos County, New Hampshire.

2. The defendant, Arthur Ruediger, D.O., was at all times relevant to this Complaint, a physician licensed to practice his profession in the State of New Hampshire.

3. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver fully herein the facts and allegations contained in the aforementioned Counts pleaded by April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, against the defendant, Arthur Ruediger, D.O., in this Complaint as if each were set forth here in its entirety.

4. As a direct and proximate result of the defendant, Arthur Ruediger, D.O.'s negligence and failure to obtain informed consent, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, have incurred and will continue to incur great expense for the medical, surgical, hospital care, and therapeutic treatment of Kassie-Marie Lamontagne throughout the remainder of her life.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Arthur Ruediger, D.O., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

**Count X.**

1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie Lamontagne, repeat and reaver all the factual allegations in the Paragraphs above under the headings of Parties and Underlying Factual Allegations, as well as Counts I through IX, as if

16

expressly written and set forth herein.  This action is to recover the conscious pain and suffering and personal injuries of Kassie-Marie Lamontagne.

2.  At all times relevant to this complaint, the defendant, Basem Elbrolosy, M.D., was a physician licensed to practice his profession in the State of New Hampshire.

3.  On or about May 18, 2020, the defendant, Basem Elbrolosy, M.D., represented and held himself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to Kassie-Marie Lamontagne that he was knowledgeable, competent, and qualified to diagnose and treat her condition on or about May 18, 2020.

4.  On or about May 18, 2020, the defendant, Basem Elbrolosy, M.D., rendered medical care and treatment to Kassie-Marie Lamontagne.

5.  On or about May 18, 2020, the defendant, Basem Elbrolosy, M.D., owed a duty to Kassie-Marie Lamontagne, to render medical care and treatment in accordance with the applicable standards of care.

6.  On or about May 18, 2020, the defendant, Basem Elbrolosy, M.D., breached his duty to Kassie-Marie Lamontagne, including but not limited to when Dr. Elbrolosy negligently, carelessly, and without regard for Ms. Lamontagne's health and well-being failed to recognize and appreciate signs and symptoms of a brain abnormality, such as an aneurysm; when Dr. Elbrolosy failed to elicit a complete and accurate medical/social history of Ms. Lamontagne; when Dr. Elbrolosy failed to elicit a complete and accurate family medical history of Ms. Lamontagne; when Dr. Elbrolosy failed to elicit a complete description of the neurological focal deficits; when Dr. Elbrolosy failed to immediately order head imaging studies, including but not necessarily limited to a head CT scan with contrast, MRI (with or without contrast), and/or CTA; when Dr. Elbrolosy failed to immediately refer the patient to the ED for an in-person neurology consultation for further evaluation and treatment and a confirmed diagnosis; when Dr. Elbrolosy failed to contact the Emergency Department to alert them of the patient's pending arrival and presentation and to ensure an emergent neurology consultation; when Dr. Elbrolosy misdiagnosed Ms. Lamontagne; and when Dr. Elbrolosy failed to obtain the necessary and appropriate diagnostic testing and treating that Ms. Lamontagne required.

7.  On or about May 18, 2020 through the present, average qualified members of the medical profession practicing the defendant's specialty knew or should have known the risks, potential consequences and alternatives to the defendant's choice of treatment of Kassie-Marie Lamontagne.

8.  On or about May 18, 2020, the defendant, Basem Elbrolosy, M.D., did not inform Kassie-Marie Lamontagne, of the alternatives to and risks and potential consequences of the defendant's choice of treatment of Ms. Lamontagne. If the defendant, Basem Elbrolosy, M.D., had informed Kassie-Marie Lamontagne of the alternatives to and risks and potential consequences of the defendant's choice of treatment of Ms. Lamontagne, neither Ms. Lamontagne, nor a reasonable person in her position would have elected the defendant's choice of treatment.  The alternatives to and the risks and potential consequences of the defendant's

17

choice of treatment were material to a decision by Ms. Lamontagne and a reasonable person in her position as to whether to undergo or forego the defendant's choice of treatment.

9. The injuries suffered by Kassie-Marie Lamontagne were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment rendered by the defendant, Basem Elbrolosy, M.D., including but not limited to the following:

a. Defendant's misrepresentations to Kassie-Marie Lamontagne that he was knowledgeable, skillful, and competent to diagnose and treat her medical condition on or about May 18, 2020;

b. Defendant's misrepresentations to Kassie-Marie Lamontagne that she did not have an acute or life-threatening medical issue requiring urgent medical attention on or about May 18, 2020;

c. Defendant's failure to render medical care and treatment to Kassie-Marie Lamontagne on or about May 18, 2020, in a knowledgeable, skillful, reasonable, safe and competent manner;

d. Defendant's failure to adequately and properly diagnose and treat Kassie-Marie Lamontagne's medical condition on or about May 18, 2020, and his failure to prescribe proper and timely treatment for said condition;

e. Defendant's failure to recognize, or have the knowledge to recognize his inability and lack of skill to diagnose and treat Kassie-Marie Lamontagne, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of his inability and failure to properly and skillfully provide Ms. Lamontagne with acceptable medical and diagnostic services;

f. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by the average qualified physician practicing his specialty;

g. Defendant's failure to recognize and appreciate signs and symptoms of a brain abnormality such as an aneurysm;

h. Defendant's failure to elicit a complete and accurate medical/social history of Ms. Lamontagne;

i. Defendant's failure to elicit a complete and accurate family medical history of Ms. Lamontagne;

j. Defendant's failure to elicit a complete description of the neurological focal deficits;

18

k. Defendant's failure to immediately order head imaging studies, including but not necessarily limited to a head CT scan with contrast, MRI (with or without contrast), and/or CTA, for further evaluation;

l. Defendant's failure to immediately refer the patient to the ED for an in-person neurology consultation for further evaluation and treatment and a confirmed diagnosis;

m. Defendant's failure to contact the Emergency Department to alert of the patient's pending arrival and presentation and to ensure an emergency neurology consultation;

n. Defendant's failure to properly diagnose the plaintiff;

o. Defendant's failure to obtain the necessary and appropriate diagnostic testing and treating that Ms. Lamontagne required; and

p. Defendant's failure to inform and failure to warn of the risks involved in or associated with Kassie-Marie Lamontagne's condition, failure to inform and warn about the treatment of said conditions, and failure to inform and disclose to Ms. Lamontagne the available alternatives to his proposed course of treatment.

10. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Basem Elbrolosy, M.D., Kassie-Marie Lamontagne was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense of her medical, surgical, hospital care and treatment, rehabilitation and therapies; has suffered and will continue to suffer great pain of body and anguish of mind; lost earning capacity; loss of enjoyment of life; hedonic damages; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Basem Elbrolosy, M.D., in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count XI.**

1. The plaintiffs, April Lamontagne for Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver all the allegations in the Paragraphs above under the headings of the Parties and Underlying Factual Allegations and Counts I through X, as if expressly rewritten and set forth herein.

2. As a direct and proximate result of the defendant, Basem Elbrolosy, M.D.'s, negligence and failure to obtain informed consent, Kassie-Marie Lamontagne has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

19

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Basem Elbrolosy, M.D., in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count XII.**
1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, reside at 380 Forbush Avenue, Berlin, Coos County, New Hampshire.

2. The defendant, Basem Elbrolosy, M.D., was at all times relevant to this Complaint, a physician licensed to practice his profession in the State of New Hampshire.

3. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver fully herein the facts and allegations contained in the aforementioned Counts pleaded by April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, against the defendant, Basem Elbrolosy, M.D., in this Complaint as if each were set forth here in its entirety.

4. As a direct and proximate result of the defendant, Basem Elbrolosy, M.D.'s, negligence and failure to obtain informed consent, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, have incurred and will continue to incur great expense for the medical, surgical, hospital care and treatment, rehabilitation and therapies, of Kassie-Marie Lamontagne throughout the remainder of her life.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Basem Elbrolosy, M.D., in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count XIII.**
1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver all the factual allegations in the Paragraphs above under the headings of Parties and Underlying Factual Allegations, as well as Counts I through XII, as if expressly written and set forth herein. This action is to recover the conscious pain and suffering and personal injuries of Kassie-Marie Lamontagne.

2. At all times relevant to this Complaint, the defendant, Virtual Radiologic Professionals, L.L.C., 11995 Singletree Lane, Suite 500, Eden Prairie, Hennepin County, MN, was at all times relevant to this Complaint, a corporation organized and existing under the laws of the State of Minnesota and doing business in New Hampshire.

3. On or about May 2, 2020, the defendant, Virtual Radiologic Professionals, L.L.C., by and through its agents, servants and employees, rendered medical care and treatment to Kassie-Marie Lamontagne.

20

4. On or about May 2, 2020, the defendant, Virtual Radiologic Professionals, L.L.C., by and through its agents, servants and employees, owed a duty to Kassie-Marie Lamontagne to render medical care and treatment in accordance with the applicable standards of care.

5. On or about May 2, 2020, the defendant, Virtual Radiologic Professionals, L.L.C., by and through its agents, servants and employees, breached its duty to Kassie-Marie Lamontagne, including but not limited to when, reviewing and interpreting a head CT scan, its agents, servants and employees negligently, carelessly, and without regard for Ms. Lamontagne's health and well-being, they failed to recognize, identify, and report a hyperdense area located proximal to the M1 segment; failed to recognize, identify, and report a finding that was worrisome and concerning for an aneurysm; failed to provide a differential diagnosis to include an aneurysm; failed to recommend further brain imaging, including but not necessarily limited to MRI of the brain, for further evaluation, diagnosis, and/or treatment; and when they misdiagnosed the plaintiff.

6. On or about May 2, 2020, average qualified members of the defendant's profession practicing the defendant's specialty knew or should have known the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff. On or about May 2, 2020, the defendant, Virtual Radiologic Professionals, L.L.C., by and through its agents, servants and employees, knew or should have known of the risk, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff. On or about May 2, 2020, the defendant, Virtual Radiologic Professionals, L.L.C., by and through its agents, servants and employees, did not inform Kassie-Marie Lamontagne, of the alternatives to and the risks and potential consequences of the defendant's choice of treatment of Ms. Lamontagne. If the defendant, Virtual Radiologic Professionals, L.L.C., by and through its agents, servants and employees, had informed Ms. Lamontagne of the alternatives to and consequences of the defendant's choice of treatment of Ms. Lamontagne, neither Ms. Lamontagne nor a reasonable person in her position would have elected the defendant's choice of treatment. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by Ms. Lamontagne and a reasonable person in her position as to whether to undergo or forego the defendant's choice of treatment.

7. The injuries sustained by Kassie-Marie Lamontagne were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment rendered by the defendant, Virtual Radiologic Professionals, L.L.C., by and through its agents, servants and employees, including, but not limited to the following:

    a. Defendant's misrepresentations to Kassie-Marie Lamontagne that it was knowledgeable, skillful, and competent to diagnose and treat her medical condition on or about May 2, 2020;

    b. Defendant's misrepresentations to Kassie-Marie Lamontagne that she did not have an acute or life-threatening medical issue requiring urgent medical attention on or about May 2, 2020;

c.  Defendant's failure to render medical care and treatment to Kassie-Marie Lamontagne on or about May 2, 2020, in a knowledgeable, skillful, reasonable, safe and competent manner;

d.  Defendant's failure to adequately and properly diagnose and treat Kassie-Marie Lamontagne's medical condition on or about March 2, 2020, and his failure to prescribe proper and timely treatment for said condition;

e.  Defendant's failure to recognize, or have the knowledge to recognize its inability and lack of skill to diagnose and treat Kassie-Marie Lamontagne, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of its inability and failure to properly and skillfully provide Ms. Lamontagne with acceptable medical and diagnostic services;

f.  Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by the average qualified physician practicing its specialty;

g.  Defendant's failure to recognize, identify, and report a hyperdense area located proximal to the M I segment;

h.  Defendant's failure to recognize, identify, and report a finding that was worrisome and concerning for an aneurysm;

i.  Defendant's failure to provide a differential diagnosis to include an aneurysm;

j.  Defendant's failure to recommend further brain imaging, including but not necessarily limited to MRI of the brain, for further evaluation, diagnosis, and/or treatment;

k.  Defendant's failure to properly diagnose the plaintiff; and

l.  Defendant's failure to inform and failure to warn of the risks involved in or associated with Kassie-Marie Lamontagne's condition, failure to inform and warn about the treatment of said conditions, and failure to inform and disclose to Ms. Lamontagne the available alternatives to her proposed course of treatment.

8.  As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Virtual Radiologic Professionals, L.L.C., by and through its agents, servants and employees, Kassie-Marie Lamontagne was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense of her medical, surgical, hospital care and treatment, rehabilitation and therapies; has suffered and will continue to suffer great pain of body and anguish of mind; lost earning capacity; loss of enjoyment of life; hedonic damages; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Virtual Radiologic

22

Professionals, L.L.C., in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count XIV.**

1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver all of the facts and allegations contained in the Paragraphs above under the headings of Parties and Underlying Factual Allegations and Counts I through XIII, as if expressly written and set forth herein.

2. As a direct and proximate result of the defendant, Virtual Radiologic Professionals, L.L.C., by and through its agents, servants and employees', negligence and failure to obtain informed consent, Kassie-Marie Lamontagne has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Virtual Radiologic Professionals, L.L.C., in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count XV.**

1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, reside at 380 Forbush Avenue, Berlin, Coos County, New Hampshire.

2. The defendant, Virtual Radiologic Professionals, L.L.C., was at all times relevant to this Complaint, a corporation duly licensed under the State of Minnesota, rendering healthcare through its agents, servants, and employees.

3. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver fully herein the facts and allegations contained in the aforementioned Counts pleaded by April Lamontagne and Roland Lamontagne, Jr., as c0-Guardians of Kassie-Marie Lamontagne, against the defendant, Virtual Radiologic Professionals, L.L.C., by and through its agents, servants and employees, in this Complaint as if each were set forth here in its entirety.

4. As a direct and proximate result of the defendant, Virtual Radiologic Professionals, L.L.C.'s, negligence and failure to obtain informed consent, by and through its agents, servants and employees, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., have incurred and will continue to incur great expenses for the medical care and treatment of Kassie-Marie Lamontagne, throughout the remainder of her life.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Guardian of Kassie-Marie Lamontagne, pray judgment against the defendant, Virtual Radiologic Professionals, L.L.C., in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

23

**Count XVI.**

1. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie Lamontagne, repeat and reaver all the factual allegations in the Paragraphs above under the headings of Parties and Underlying Factual Allegations, as well as Counts I through XV, as if expressly written and set forth herein. This action is to recover the conscious pain and suffering and personal injuries of Kassie-Marie Lamontagne.

2. At all times relevant to this Complaint, the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, 59 Page Hill Road, Berlin, Coos County, New Hampshire, was at all times relevant to this Complaint a corporation organized and existing under the laws of the State of New Hampshire.

3. On or about May 2, 2020, the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, by and through its agents, servants and employees, rendered medical care and treatment to Kassie-Marie Lamontagne.

4. On or about May 2, 2020, the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, by and through its agents, servants and employees, owed a duty to Kassie-Marie Lamontagne to render medical care and treatment in accordance with the applicable standards of care.

5. On or about May 2, 2020, the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, by and through its agents, servants and employees, breached its duty to Kassie-Marie Lamontagne, including but not limited to when, reviewing and interpreting a head CT scan, its agents, servants and employees negligently, carelessly, and without regard for Ms. Lamontagne's health and well-being, they failed to recognize, identify, and report a hyperdense area located proximal to the M1 segment; failed to recognize, identify, and report a finding that was worrisome and concerning for an aneurysm; failed to provide a differential diagnosis to include an aneurysm; failed to recommend further brain imaging, including but not necessarily limited to MRI of the brain, for further evaluation, diagnosis, and/or treatment; and when they misdiagnosed the plaintiff.

6. On or about May 2, 2020, average qualified members of the defendant's profession practicing the defendant's specialty knew or should have known the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff. On or about May 2, 2020, the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, by and through its agents, servants and employees, knew or should have known of the risk, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff. On or about May 2, 2020, the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, by and through its agents, servants and employees, did not inform Kassie-Marie Lamontagne, of the alternatives to and the risks and potential consequences of the defendant's choice of treatment of Ms. Lamontagne. If the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, by and through its agents, servants and employees, had informed Ms. Lamontagne of the alternatives to and consequences of the defendant's choice of treatment of Ms. Lamontagne, neither Ms. Lamontagne nor a reasonable person in her position would have elected the defendant's choice of treatment. The alternatives

24

to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by Ms. Lamontagne and a reasonable person in her position as to whether to undergo or forego the defendant's choice of treatment.

7. The injuries sustained by Kassie-Marie Lamontagne were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment rendered by the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, by and through its agents, servants and employees, including, but not limited to the following:

   a. Defendant's misrepresentations to Kassie-Marie Lamontagne that it was knowledgeable, skillful, and competent to diagnose and treat her medical condition on or about May 2, 2020;

   b. Defendant's misrepresentations to Kassie-Marie Lamontagne that she did not have an acute or life-threatening medical issue requiring urgent medical attention on or about May 2, 2020;

   c. Defendant's failure to render medical care and treatment to Kassie-Marie Lamontagne on or about May 2, 2020, in a knowledgeable, skillful, reasonable, safe and competent manner;

   d. Defendant's failure to adequately and properly diagnose and treat Kassie-Marie Lamontagne's medical condition on or about May 2, 2020, and his failure to prescribe proper and timely treatment for said condition;

   e. Defendant's failure to recognize, or have the knowledge to recognize its inability and lack of skill to diagnose and treat Kassie-Marie Lamontagne, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of its inability and failure to properly and skillfully provide Ms. Lamontagne with acceptable medical and diagnostic services;

   f. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by the average qualified physician practicing its specialty, when reviewing and interpreting a head CT scan;

   g. Defendant's failure to recognize, identify, and report a hyperdense area located proximal to the M1 segment;

   h. Defendant's failure to recognize, identify, and report a finding that was worrisome and concerning for an aneurysm;

   i. Defendant's failure to provide a differential diagnosis to include an aneurysm;

   j. Defendant's failure to recommend further brain imaging, including but not necessarily limited to MRI of the brain, for further evaluation, diagnosis, and/or treatment;

   k. Defendant's failure to properly diagnose the plaintiff; and

I.  Defendant's failure to inform and failure to warn of the risks involved in or associated with Kassie-Marie Lamontagne's condition, failure to inform and warn about the treatment of said conditions, and failure to inform and disclose to Ms. Lamontagne the available alternatives to her proposed course of treatment.

8.  As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, by and through its agents, servants and employees, Kassie-Marie Lamontagne was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense of her medical, surgical, hospital care and treatment, rehabilitation and therapies; has suffered and will continue to suffer great pain of body and anguish of mind; lost earning capacity; loss of enjoyment of life; hedonic damages; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count XVII.**
1.  The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reavers all of the facts and allegations contained in the Paragraphs above under the headings of Parties and Underlying Factual Allegations and Counts I through XVI, as if expressly written and set forth herein.

2.  As a direct and proximate result of the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, by and through its agents, servants and employees', negligence and failure to obtain informed consent, Kassie-Marie Lamontagne has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count XVIII.**
1.  The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, reside at 380 Forbush Avenue, Berlin, Coos County, New Hampshire.

2.  The defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, was at all times relevant to this Complaint, a corporation duly licensed under the State of New Hampshire, rendering healthcare through its agents, servants, and employees.

26

3. The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver fully herein the facts and allegations contained in the aforementioned Counts pleaded by April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, against the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, by and through its agents, servants and employees, in this Complaint as if each were set forth here in its entirety.

4. As a direct and proximate result of the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, negligence and failure to obtain informed consent, by and through its agents, servants and employees, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., have incurred and will continue to incur great expenses for the medical, surgical, hospital care and treatment, rehabilitation and therapies, of Kassie-Marie Lamontagne, throughout the remainder of her life.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Coos North Country Radiology, P.L.L.C., d/b/a North Country Radiology, in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

## Count XIX.

1. The plaintiffs, April Lamontagne and Roland Lamontagne, as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver all the factual allegations in the Paragraphs above under the headings of Parties and Underlying Factual Allegations, as well as Counts I through XVIII, as if expressly written and set forth herein. This action is to recover the conscious pain and suffering and personal injuries of Kassie-Marie Lamontagne.

2. At all times relevant to this Complaint, the defendant, Androscoggin Valley Hospital, 59 Page Hill Road, Berlin, Coos County, New Hampshire, was at all times relevant to this Complaint a corporation organized and existing under the laws of the State of New Hampshire.

3. On or about May 2, 2020, the defendant, Androscoggin Valley Hospital, by and through its agents, servants and employees, rendered medical care and treatment to Kassie-Marie Lamontagne.

4. On or about May 2, 2020, the defendant, Androscoggin Valley Hospital, by and through its agents, servants and employees, owed a duty to Kassie-Marie Lamontagne to render medical care and treatment in accordance with the applicable standards of care.

5. On or about May 2, 2020, the defendant, Androscoggin Valley Hospital, by and through its agents, servants and employees, breached its duty to Kassie-Marie Lamontagne, including but not limited to when they failed to recognize and appreciate signs and symptoms of a brain abnormality, such as an aneurysm; when they failed to elicit a complete and accurate medical/social history of Ms. Lamontagne; when they failed to elicit a complete and accurate family medical history of Ms. Lamontagne; when they failed to elicit a full understanding of the description of the headache history from Ms. Lamontagne; when they failed to order a head

CT scan with contrast, and/or MRI (with or without contrast), and/or CTA for further evaluation; when they failed to recognize, identify, and report a hyperdense area located proximal to the M1 segment; when they failed to recognize, identify, and report a finding that was worrisome and concerning for an aneurysm; when they failed to provide a differential diagnosis to include an aneurysm; when they failed to recommend further brain imaging, including but not necessarily limited to MRI of the brain, for further evaluation, diagnosis, and/or treatment; when they failed to obtain an urgent neurology consultation for further evaluation and treatment; when they misdiagnosed Ms. Lamontagne; and when they discharged Ms. Lamontagne to home rather than obtain the necessary and appropriate diagnostic testing and treating that she required.

6. On or about May 2, 2020, average qualified members of the defendant's profession practicing the defendant's specialty knew or should have known the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff. On or about May 2, 2020, the defendant, Androscoggin Valley Hospital, by and through its agents, servants and employees, knew or should have known of the risk, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff. On or about May 2, 2020, the defendant, Androscoggin Valley Hospital, by and through its agents, servants and employees, did not inform Kassie-Marie Lamontagne, of the alternatives to and the risks and potential consequences of the defendant's choice of treatment of Ms. Lamontagne. If the defendant, Androscoggin Valley Hospital, by and through its agents, servants and employees, had informed Ms. Lamontagne of the alternatives to and consequences of the defendant's choice of treatment of Ms. Lamontagne, neither Ms. Lamontagne nor a reasonable person in her position would have elected the defendant's choice of treatment. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by Ms. Lamontagne and a reasonable person in her position as to whether to undergo or forego the defendant's choice of treatment.

7. The injuries sustained by Kassie-Marie Lamontagne were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment rendered by the defendant, Androscoggin Valley Hospital, by and through its agents, servants and employees, including, but not limited to the following:

8. Defendant's misrepresentations to Kassie-Marie Lamontagne that it was knowledgeable, skillful, and competent to diagnose and treat her medical condition on or about May 2, 2020;

   a. Defendant's misrepresentations to Kassie-Marie Lamontagne that she did not have an acute or life-threatening medical issue requiring urgent medical attention on or about May 2, 2020;

   b. Defendant's failure to render medical care and treatment to Kassie-Marie Lamontagne on or about May 2, 2020, in a knowledgeable, skillful, reasonable, safe and competent manner;

   c. Defendant's failure to adequately and properly diagnose and treat Kassie-Marie Lamontagne's medical condition on or about March 2, 2020, and his failure to prescribe proper and timely treatment for said condition;

d. Defendant's failure to recognize, or have the knowledge to recognize its inability and lack of skill to diagnose and treat Kassie-Marie Lamontagne, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of its inability and failure to properly and skillfully provide Ms. Lamontagne with acceptable medical and diagnostic services;

e. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by the average qualified physician practicing his specialty, treating an otherwise healthy 28 year old with complaints of new-onset headache for more than one month; without relief with home medication; and that increased in severity, was described as throbbing, and was associated with blurred vision, nausea, and specific neurological symptoms that include tingling in the right hand, below the right eye, and tip of tongue;

f. Defendant's failure to recognize, identify, and report a hyperdense area located proximal of the M1 segment;

g. Defendant's failure to recognize, identify, and report a hyperdense area located proximal to the M1 segment;

h. Defendant's failure to recognize, identify, and report a finding that was worrisome and concerning for an aneurysm;

i. Defendant's failure to provide a differential diagnosis to include an aneurysm;

j. Defendant's failure to recognize and appreciate signs and symptoms of a brain abnormality, such as an aneurysm;

k. Defendant's failure to elicit a complete and accurate medical/social history of Ms. Lamontagne;

l. Defendant's failure to elicit a complete and accurate family medical history of Ms. Lamontagne;

m. Defendant's failure to elicit a full understanding of the description of the headache history from Ms. Lamontagne;

n. Defendant's failure to order additional head imaging for further evaluation;

o. Defendant's failure to obtain an urgent neurology consultation for further evaluation and treatment;

p. Defendant's failure to recommend further brain imaging for further evaluation, diagnosis, and/or treatment;

q. Defendant's failure to properly diagnose the plaintiff; and

29

r.  Defendant's failure to inform and failure to warn of the risks involved in or associated with Kassie-Marie Lamontagne's condition, failure to inform and warn about the treatment of said conditions, and failure to inform and disclose to Ms. Lamontagne the available alternatives to his proposed course of treatment.

9.  As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Androscoggin Valley Hospital, by and through its agents, servants and employees, Kassie-Marie Lamontagne was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense of her medical, surgical, hospital care and treatment, rehabilitation and therapies; has suffered and will continue to suffer great pain of body and anguish of mind; lost earning capacity; loss of enjoyment of life; hedonic damages; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Androscoggin Valley Hospital, in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count XX.**

1.  The plaintiff, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver all of the facts and allegations contained in the Paragraphs above under the headings of Parties and Underlying Factual Allegations and Counts I through XIX, as if expressly written and set forth herein.

2.  As a direct and proximate result of the defendant, Androscoggin Valley Hospital, by and through its agents, servants and employees', negligence and failure to obtain informed consent, Kassie-Marie Lamontagne has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Androscoggin Valley Hospital, in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

**Count XXI.**

1.  The plaintiff, April Lamontagne, as Guardian of Kassie-Marie Lamontagne, reside at 380 Forbush Avenue, Berlin, Coos County, New Hampshire.

2.  The defendant, Androscoggin Valley Hospital, was at all times relevant to this Complaint, a corporation duly licensed under the State of New Hampshire, rendering healthcare through its agents, servants, and employees.

3.  The plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, repeat and reaver fully herein the facts and allegations contained in the aforementioned Counts pleaded by April Lamontagne and Roland Lamontagne, Jr., as Co-

30

Guardians of Kassie-Marie Lamontagne, against the defendant, Androscoggin Valley Hospital, by and through its agents, servants and employees, in this Complaint as if each were set forth here in its entirety.

4. As a direct and proximate result of the defendant, Androscoggin Valley Hospital's, negligence and failure to obtain informed consent, by and through its agents, servants and employees, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., have incurred and will continue to incur great expenses for the medical, surgical, hospital care and treatment, rehabilitation and therapies, of Kassie-Marie Lamontagne, throughout the remainder of her life.

WHEREFORE, the plaintiffs, April Lamontagne and Roland Lamontagne, Jr., as Co-Guardians of Kassie-Marie Lamontagne, pray judgment against the defendant, Androscoggin Valley Hospital, in an amount which is just and appropriate to compensate Kassie-Marie Lamontagne for her injuries, together with interest and costs.

PLAINTIFFS DEMAND TRIAL BY JURY

Respectfully submitted,
The plaintiffs,
By their attorneys,

/s/ Nicholas D. Cappiello
Nicholas D. Cappiello, Esq., NH ID#: 17662
LUBIN & MEYER, P.C.
100 City Hall Plaza
Boston, MA 02108
(617) 720-4447
ncappiello@lubinandmeyer.com

31