UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


April Lamontagne and Roland Lamontagne
as Co-Guardians of Kassie-Marie Lamontagne

    v.                                                    Civil No.  23-cv-395-JL-TSM
                                                         Opinion No. 2026 DNH 075

Rashmi Hande, M.D., et al.


**ORDER ON MOTIONS *IN LIMINE***

This order provides rulings on the parties' evidentiary motions *in limine*.[1]  April and

Roland Lamontagne bring this medical negligence action on behalf of their daughter,

Kassie-Marie Lamontagne, against the physicians and medical institutions that treated

Kassie-Marie who suffered, at 28 years old, permanent neurological injuries due to a

ruptured brain aneurysm.[2]  Counsel have undertaken to work collaboratively (where

appropriate) to resolve several issues by agreement.[3]

These rulings are made without prejudice to revisiting particular issues in response

to circumstances that might arise during trial.  Furthermore, these rulings are limited to

grounds argued in the parties' filings and discussed at oral argument.  The court reserves

the right to assess other factors at trial, such as hearsay, authenticity, and best evidence, *see*

Fed. R. Evid. 801 *et seq.*, 901 *et seq.*, and 1001 *et seq.*, and where appropriate, arguments

---

[1] Doc. nos. 50, 51, 53, 58, 59, 61, 69, 71, & 86.

[2] Doc. nos. 1.1, 17, & 95.

[3] Doc. no. 95.

and grounds not raised by each side. In every instance below where the court found evidence to be admissible under the rules pertaining to relevance, *see* Fed. R. Evid. 401 *et seq.*, or witnesses, *see* Fed. R. Evid. 601 *et seq.*, it has determined that its relevance and probative value are not outweighed by a danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time, or cumulation. *See* Fed. R. Evid. 403.  To the extent the court here rules that evidence may be admitted for a limited purpose, *see* Fed. R. Evid. 105, it will give the jury a limiting instruction upon the request of counsel at trial.

### **Medical bills evidence**

*Collateral source rule.*  Part of the compensatory damages the plaintiffs seek in this case is the reasonable value of medical services provided to Kassie-Marie to treat the ruptured aneurysm and the resulting injuries.  The defendants contend that the reasonable value of those services is the amounts actually paid (by third party payors) and not the amounts billed for the services, and move to exclude evidence of the face amounts of the medical bills, arguing that the plaintiffs did not pay those amounts and that damages for the full billed amounts would be a windfall to the plaintiffs.[4]  The plaintiffs move to exclude any reference to Medicaid and Medicare benefits.[5]

This court has repeatedly rejected the arguments that defendants raise here as inconsistent with New Hampshire's collateral source rule.[6] *See Aumand v. Dartmouth*

---

[4] Doc. nos. 51 & 58.

[5] Doc. no. 59.

[6] Defendants rely on New Hampshire Superior Court decisions, including a thoughtful order by Judge Attorri, to support their argument. *See Violette v. Kustan*, No. 212-2022-cv-00007 (N.H. Super. Ct. Dec. 8, 2025) (citing cases).  In light of settled authority here, the court does not find

*Hitchcock Med. Ctr.*, 611 F. Supp. 2d 78, 90-92 (D.N.H. 2009) (Laplante, J.) (stating "the court rejected essentially the same argument in *Williamson v. Odyssey House, Inc.*, 2000 DNH 238, 2000 WL 1745101 (DiClerico, J.)" and holding that defendant could not introduce evidence of what was actually paid for medical services); *see also Picard v. Ciulla*, 691 F. Supp. 3d 405, 407-08 (D.N.H. 2023) (McCafferty, J.) ("Whether the plaintiff in fact paid for the medical services rendered – or ever incurred any legal liability for the medical services rendered – is not an aspect of compensatory damages as they relate to medical services."); *Doreen W. v. MWV Healthcare Assocs., Inc.*, 937 F. Supp. 2d 194, 196 (D.N.H. 2013) (Laplante, J.) ("[T]his court has repeatedly rejected similar arguments as 'at odds with New Hampshire's collateral source rule.'" (quoting *Reed v. Nat'l Council of Boy Scouts of Am., Inc.*, 706 F. Supp. 2d 180, 190 (D.N.H. 2020) (Laplante, J.)). Therefore, defendants cannot introduce evidence or refer to payments made by third parties, including Medicaid and Medicare, or otherwise introduce evidence of the amounts actually paid for their services.

 ***Timeliness of disclosure***.  The defendants argue that the collateral source rule does not apply in this case because the plaintiffs did not disclose the billed amounts of the medical services until after the mandatory disclosure deadline.  The plaintiffs respond that the amounts were disclosed on August 1, 2025, eleven months before trial.  Given the intervening time and the lack of prejudice to defendants, the late disclosure is not a reason

---

those decisions persuasive.  While ultimately rejecting this court's approach, Judge Attori recognizes that it represents the majority rule.  *Id*. at 2.

to preclude the medical bills as evidence of damages.[7] *See also* <u>*Valdez v. Lowry*, No. 18-cv-5434, 2021 WL 5769533, at \*16 (N.D. Ill. Dec. 5, 2021)</u> (holding that when charges for medical services were not disclosed as required under Fed. R. Civ. P. 26(a), "the sanction of exclusion under Rule 37(c)(1) is not warranted if plaintiff's failure to comply with Rule 26(a) was harmless").

 ***Expert testimony on "reasonableness" of medical bills.*** The defendants also argue that the plaintiffs cannot introduce the medical bills to show the reasonable value of their medical services because the plaintiffs lack expert opinion to show that the amounts the defendants billed were reasonable and customary for the services provided. Contrary to the defendants' argument, the face amounts of medical bills, the amounts billed for services, are evidence of the reasonable value of the medical services rendered. *Doreen W.*, 937 F. Supp. 2d at 197. While the billed amounts are presumed to be reasonable, "[i]t may be true that the face amount of [plaintiff's] medical bills is not conclusive on that point." *Id.* "[N]othing prevents a defendant from questioning the face amount of medical bills as equivalent to the reasonable value of the plaintiff's medical expenses . . . so long as the defendant does not use the amounts actually paid, by the plaintiff's insurers, to settle those bills to do so." *Id.* To be clear, the ruling here is not that medical bills establish the reasonable value of medical services as a matter of law, as the Supreme Court of New

---

[7] The court also notes that the bills were generated by the defendants. While each defendant may not have been aware of what other defendants billed for their services, each defendant knew what was billed on its behalf. For that reason, the amounts billed for services were not unknown or hidden from defendants.

Hampshire has never so held.  Rather, it is that such bills are evidence of reasonable value, and are thus admissible.

For these reasons, the court denies the defendants' motions to exclude the face amounts of their bills for medical services from evidence at trial. The court grants the plaintiffs' motion to exclude evidence and any reference to Medicaid and Medicare benefits at trial.

### Liability insurance

Defendants Virtual Radiologic Professionals, LLC ("VRP") and Rashmi Hande, M.D. move to preclude reference to Hande's medical malpractice liability insurance at trial.[8] The plaintiffs intend to introduce evidence that VRP paid for Hande's insurance to show that Hande worked as an employee or agent for VRP for purposes of proving VRP's vicarious liability for Hande's alleged negligence.[9]

If Hande was an employee or an agent of VRP when services were provided for Kassie-Marie, then VRP may be liable for Hande's negligence based on vicarious liability. *Tessier v. Rockefeller*, 162 N.H. 324, 342 (2011). Evidence that VRP paid for Hande's insurance is relevant to the issue of employment or agency. *See Dent v. Exeter Hosp., Inc.*, 155 N.H. 787, 792 (2007) (providing factual elements necessary to establish agency); *McDaniel v. Pres. Prop. Mgmt. Co., LLC* , 781 F. Supp. 3d 9, 17 (D.R.I. 2025) (noting that under common law agency principles whether an employer provides benefits such as

---

[8] Doc. no. 61.

[9] Doc. no. 103.

insurance is a factor in determining agency). Under Federal Rule of Evidence 411, evidence of liability insurance is not admissible to prove that a person acted negligently, but "the court may admit this evidence for another purpose, such as proving . . . agency." When considering whether to allow evidence of insurance for a purpose other than to prove liability under Rule 411, the court must also apply the restrictions imposed by Federal Rule of Evidence 403. *Pinkham v. Burgess*, 933 F.2d 1066, 1072 (1st Cir. 1991); *accord Bohmbach v. Shivers*, No. 22-cv-10318-JEK, 2024 WL 4505215, at *1 (D. Mass. Oct. 16, 2024). Rule 403 provides "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

VRP and Hande argue that evidence of Hande's medical malpractice liability insurance would be highly prejudicial because the jury would then be aware that Hande was insured and would presume that all defendants were insured. The defendants further argue that the knowledge of insurance would make the jury more likely to decide in favor of the plaintiffs. They propose that the plaintiffs simply introduce evidence that VRP provided Hande a "benefit", for purposes of proving agency, without mentioning insurance. They also argue that because providing benefits is only one of many indicia of agency, the purchase of medical malpractice liability insurance is only minimally probative on the agency issue.

The plaintiffs argue that VRP's purchase of medical malpractice liability insurance for Hande, as opposed to providing an unidentified benefit, is specifically probative of

6

agency in this case. They contend that the purchase of medical malpractice insurance shows that VRP assumed responsibility for Hande's work and provided the only medical malpractice insurance that she had.  They further assert that medical malpractice insurance is linked to Hande's work because VRP provides medical services and Hande as a radiologist provided those services for VRP.

In the circumstances presented in this case, evidence that VRP purchased medical malpractice liability insurance for Hande is highly probative of their employment/agency relationship, which in turn, is necessary to support a theory of vicarious liability. Rule 403 weighing does not require its exclusion under these circumstances. To the extent VRP and Hande are concerned about any resulting prejudice, they may request an appropriate limiting instruction. Fed. R. Evid. 105.

### **Failed board examination**

Defendants VRP and Hande move to exclude any evidence, argument, or reference to the fact that one of their expert witnesses, Jeremy Schiller, M.D., failed the written portion of his radiology board certification examination on his first attempt in 2007.[10]  The defendants argue that such evidence is irrelevant because Dr. Schiller passed the examination on his second attempt and completed all subsequent recertification testing. The defendants further contend that any reference to the topic would be unfairly prejudicial because it would "encourage the Jury to decide this matter based upon a suggestion of

---

[10] Doc. no. 50.

incompetence that does not exist."[11]  The plaintiffs object, arguing that Dr. Schiller's initial testing failure is permissible impeachment evidence of his qualifications to opine in this matter.[12]

The defendants' reference to a suggestion of "incompetence" overstates the issue. The court is permitting Dr. Schiller to offer opinion evidence based on his "knowledge skill, experience, training, [and] education," *see* Fed. R. Evid. 702, and the jurors will be instructed that they may consider those opinions based on whatever weight they assign them.  That Dr. Schiller once failed a board certification examination is relevant to the strength of his qualifications and, in turn, to the weight the jury should assign to his testimony.  Fed. R. Evid. 401, 402.  While the evidence may be prejudicial to the defendants insofar as it undermines the strength of Dr. Schiller's authority, its probative value sufficiently outweighs any *unfair* prejudice.  Fed. R. Evid. 403 (permitting the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: *unfair* prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" (emphasis added)). Defense counsel may rehabilitate Dr. Schiller's credibility on redirect examination (or otherwise buttress it) and emphasize his subsequent career achievements with both evidence and argument.  Defendants' motion[13] is denied.

---

[11] *Id.* at 2.

[12] Doc. no. 99.

[13] Doc. no. 50.

### **"Hypothetical" testimony about emergency treatment**

Defendants Askhat Paliwal, M.D., and Coos North Country Radiology move to preclude testimony, questioning, or argument relating to whether, had Kassie-Marie's aneurism been diagnosed during her visit to the emergency room on May 2, 2020, she would have requested or obtained expedited treatment before it ruptured on May 25, 2020.[14]  The defendants plan to present expert testimony that the necessary procedure to treat an unruptured aneurysm generally requires at least four weeks of lead time and thus, even assuming the aneurysm had been diagnosed on May 2, it is thus unlikely that Kassie-Marie would have received definitive treatment in time to prevent rupture.  The plaintiffs, in turn, seek to present testimony from Kassie-Marie's family to show that she would have sought immediate treatment had she known she had a brain aneurysm,  as well as expert testimony that earlier treatment would have prevented her injuries.[15]  The defendants contend that the plaintiffs' theory lacks evidentiary support and is based solely on speculation regarding what Kassie-Marie would have done in a hypothetical scenario. They further argue that any such evidence is irrelevant and, alternatively, that its limited probative value is substantially outweighed by the risk of unfair prejudice, jury confusion, and misleading the jury on the issue of causation.  The plaintiffs respond that evidence concerning whether Kassie-Marie would have pursued expedited treatment is relevant to causation and is supported by anticipated testimony regarding her extensive family history

---

[14] Doc. no. 69.

[15] Doc. no. 96 at 5-6.

of aneurysms, her knowledge of the risks they posed, and prior discussions with her parents about aneurysm treatment.  The plaintiffs contend that the weight and credibility of that evidence, as well as any expert witness testimony concerning treatment timing, are proper matters for the jury's consideration.

The plaintiffs' family witnesses may testify to what they personally observed and heard, including their conversations with Kassie-Marie about aneurysms, her family history, and any statements she made regarding her views on treatment (for permissible non-hearsay purposes or under hearsay exceptions).  Such testimony is within the personal knowledge of those witnesses and therefore proper under Rule 602.  Fed. R. Evid. 602 (permissible basis for fact witness testimony); *see also* Fed. R. Evid. 601 ("Every person is competent to be a witness unless these rules provide otherwise.").  The plaintiffs' family witnesses may not, however, offer opinions about Kassie-Marie's unexpressed intentions, subjective state of mind, or what she "would have done" in a hypothetical scenario.  Plaintiffs' counsel have not proffered testimony of this sort, or pointed to such evidence received during the discovery process.  Moreover, this type of opinion testimony is impermissible under Rule 701, which provides that lay witnesses may offer opinions only where then they are "rationally based on [their own] perception" and not speculation about the thoughts, feelings, or anticipated conduct of another person.  *See* Fed. R. Evid. 701 (permissible basis for lay opinion testimony).  To the extent the plaintiffs' family members propose to opine that Kassie-Marie would have sought expedited treatment if diagnosed, that testimony is excludable as speculation about matters beyond their personal knowledge.  Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced

sufficient to support a finding that the witness has personal knowledge of the matter."); *see also* Fed. R. Evid. 601 (competency to testify).

The parties' medical experts, however, may be examined on the question of whether earlier diagnosis and treatment would have altered Kassie-Marie's outcome, including under a hypothetical scenario in which she pursued expedited care following a May 2 diagnosis. Experts may properly respond to background hypotheticals, even where the predicate facts are not yet established in the record. *See* Fed. R. Evid. 702, 703; *Coleman v. De Minico,* 730 F.2d 42, 46 (1st Cir. 1984) ("Just as a court may not permit an expert to testify on the basis of pure conjecture, neither may the court exclude any and all expert testimony not premised entirely on facts already proven by evidence before the jury."); *see also* Fed. R. Evid. 401-403. Such testimony has probative value as to causation and is not inadmissible merely because the underlying premise remains contested. Defense counsel will have the opportunity to cross-examine the plaintiffs' expert on the subject, including by eliciting that there is no direct evidence Kassie-Marie would in fact have sought expedited treatment and no opposing expert opinion to that effect. The court will issue a limiting instruction upon request if necessary to assist the jury in evaluating the conditional nature of any such expert opinion. *See* Fed. R. Evid. 105, 104(b).

Defendants' motion to preclude testimony and questioning relating to whether Kassie-Marie would have requested urgent treatment of her aneurysm[16] is partially granted and partially denied, subject to the limitations above.

---

[16] Doc. no. 69.

**"Hypothetical" testimony about "sentinel bleed"**

Defendants Akshat Paliwal, M.D., and Coos North Country Radiology move to preclude testimony, questioning, or argument suggesting that Kassie-Marie had a "sentinel bleed"—a minor leakage of blood from a brain aneurysm that precedes the aneurysm's rupture—when she sought treatment on May 2, 2020.[17]  The defendants argue that the plaintiffs lack any properly disclosed expert opinion supporting that theory and that both of the plaintiffs' physician experts agreed that the May 2 CT scan showed no evidence of a "leaking" aneurysm or sentinel bleed.  The defendants argue that any suggestion of a sentinel bleed is accordingly speculative, unsupported by expert testimony, and likely to mislead the jury on the causation question relating to the timing of Kassie-Marie's treatment.

The plaintiffs do not contest that the May 2 imaging contains no indication of a sentinel bleed but maintain that testimony concerning sentinel bleeds provides important background information relevant to whether the defendants complied with the standard of care in treating Kassie-Marie on May 2.[18]  Specifically, the plaintiffs argue that a sentinel bleed is one of two mechanisms by which an aneurysm may produce symptoms before rupture (the other being a "space-occupying lesion") and therefore presented a possible explanation for Kassie-Marie's symptoms that the defendants' failed to recognize and properly investigate when Kassie-Marie sought treatment on May 2.  The plaintiffs contend

---

[17] Doc. no. 71.

[18] Doc. no. 97.

that their aneurysm expert disclosed opinions regarding the signs and symptoms of aneurysms, including sentinel bleeds and space-occupying lesions, and that any dispute over whether a sentinel bleed was present, or the significance of the May 2 imaging, goes to the weight of the evidence rather than its admissibility and is properly addressed through cross-examination.

The court denies the motion.  The plaintiffs' theory is that the symptoms and risk factors with which Kassie-Marie presented on May 2 indicated the presence of an unruptured brain aneurysm and warranted additional investigation.  Testimony explaining why and how a patient would experience symptoms of a brain aneurysm prior to its rupture—namely, because the aneurysm is leaking (a "sentinel bleed") or causing intracranial pressure due to its space-occupying nature—is relevant to that theory and may assist the jury in understanding the plaintiffs' contentions.[19]  *See* Fed. R. Evid. 702(a) (expert witness may testify if his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue").  The absence of radiographic evidence of bleeding on the May 2 CT imaging does not alter that conclusion.  While the plaintiffs do not dispute that the non-contrast CT obtained that day showed no evidence of a rupture, their expert opines that Kassie-Marie's clinical presentation was sufficiently consistent with an unruptured brain aneurysm that the defendants should have conducted additional diagnostic measures, including consultation

---

[19] *See, e.g.,* doc. no. 97-1.

with neurology or neurosurgery specialists and different imaging modalities, such as MRI or contrast-enhanced CT imaging.[20]

The court is also unpersuaded that this testimony falls outside the scope of the plaintiffs' expert disclosures. Fed. R. Civ. P. 26(a)(2) (expert witness disclosure requirements). The plaintiffs' expert, Dr. Bloomberg, disclosed opinions regarding "the signs and symptoms of a brain aneurysm," including "sentinel bleeds and space occupying lesions," as well as "the responsibility to and benefit of ordering and/or obtaining imaging of the brain and head" and consulting neurology or neurosurgery in the presence of signs, symptoms, and risk factors for a brain aneurysm. That disclosure was sufficient to place the defendants on notice that Dr. Bloomberg intended to discuss sentinel bleeds as one potential mechanism by which an aneurysm may produce symptoms before rupture and the significance of that possibility to the standard-of-care analysis. Fed. R. Civ. P. 26(a)(2)(B) (expert witness report requirements).

The court agrees with the defendants, however, that the present record does not support expert testimony that Kassie-Marie in fact suffered a sentinel bleed on May 2. The plaintiffs acknowledge that the CT imaging contains no evidence of a sentinel bleed, and they have not identified any disclosed expert opinion concluding that a sentinel bleed was likely to have actually occurred. United States v. Diaz, 300 F.3d 66, 73 (1st Cir. 2002) ("expert testimony must be relevant to the task at hand and rest on a reliable basis"). Any

---

[20] See Stephen Bloomfield, M.D., Expert Disclosure (doc. no. 71-1) at 13.

14

such opinion would therefore lack an adequate evidentiary foundation and invite the jury to speculate. *See* Fed. R. Evid. 702(b), (d); Fed. R. Evid. 403.

Accordingly, the plaintiffs may present expert testimony regarding aneurysms that can cause symptoms before rupture, including sentinel bleeds and space-occupying lesions, and may elicit testimony concerning whether Kassie-Marie's symptoms were consistent with an unruptured aneurysm and the implications that possibility had for the applicable standard of care. The plaintiffs may not, however, present testimony or argument that Kassie-Marie was actually suffering a sentinel bleed on or around May 2, 2020. The motion is therefore partially granted and partially denied, subject to the limitations above.

### Advisory jury

The plaintiffs sued a Federal Tort Claims Act ("FTCA") defendant in this case because it subsidizes defendant Coos County Family Health Center.[21] 28 U.S.C. § 1346(b). The United States moves to preclude the court from utilizing the jury, which will be empaneled to try the medical negligence claims against the other defendants, to determine or advise on liability or damages as to the claims against it because claims under the FTCA are tried to the court.[22] 28 U.S.C § 2402. The plaintiffs respond (and the government's conceded at oral argument) that the court has discretion under Fed. R. Civ. P. 39(c)(1) to use an advisory jury and ask that the court do so here.[23]

---

[21] Doc. no. 1, at 1-2.

[22] Doc.no. 86.

[23] Doc. no. 102.

Rule 39(c) provides: "In an action not triable of right by a jury, the court, on motion or its own: (1) may try an issue with an advisory jury; or (2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right, unless the action is against the United States and a federal statute provides for a nonjury trial." Fed. R. Civ. P. 39(c). Because the action is against the United States, and § 2402 provides for a nonjury trial, the second option is not available in this case.

Many courts have determined that they have discretion under Rule 39(c)(1) to empanel an advisory jury in a FTCA case. *See Touko v. United States*, No. 20-cv-1113, 2023 WL 5957570, at *3-*4 (D. Md. Sept. 13, 2023) (citing cases); *Fields v. United States*, No. 22-cv-426, 2023 WL 3237252, at *2 (S.D.W.Va. May 3, 2023); *Maher v. Creighton St. Joseph Regional Healthcare Sys., LLC*, No. 13-cv-9, 2013 WL 12145917, at *1 (D. Neb. June 26, 2013). Despite that determination, courts often decide not to exercise that discretion when the FTCA claim against the United States is the only claim to be tried. *See Touko; 2023 WL 5957570,* at *4-*5; *Mowry v. United States*, 19-cv-627, 2021 WL 1857132, at*4 (N.D. Ohio May 10, 2021). In this case, the medical negligence claims against all defendants except the United States will be tried to a jury. The court may exercise its discretion to utilize the jury in an advisory capacity for purposes of the court's findings and rulings in the FTCA case against the United States, but will defer that discussion until all defendants have rested their cases.

## Conclusion

16

For these reasons, the court denies the defendants' motions *in limine* to exclude the medical bills[24]; denies the defendants' motion in limine to exclude reference to Dr. Hande's board examination failure[25]; grants the plaintiffs' motion to exclude reference to Medicaid and Medicare[26]; denies the defendants' motion to exclude mention of liability insurance[27]; denies the United States's motion to preclude an advisory jury[28]; partially grants and partially denies the defendants' motion to exclude reference to expedited treatment[29]; and partially grants and partially denies the defendants' motion to exclude reference to sentinel bleeds[30].

SO ORDERED.

Joseph N. Laplante
United States District Judge

Dated:  June 15, 2026
cc:    Counsel of record.

---

[24] Doc. nos. 51, 58.

[25] Doc. no. 50.

[26] Doc. no. 59.

[27] Doc. no. 61.

[28] Doc. no. 86.

[29] Doc. no. 69.

[30] Doc. nos. 71, 115.

17